FRANCES A. SAVAGE, administratrix, &c., respondent,

*v.*

ALFRED D. DOWRIE, appellant.

[Submitted May 26th, 1933. Decided September 27th, 1933.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Backes, who filed the following opinion:

"This partnership accounting followed upon the opinion reported in *111 N. J. Eq. 108.* The master to whom it was referred reported that Mr. Savage owed his firm $13,210.87, made up of these items:

**1931.**

| | | |
|---|---|---:|
| April 30. | Balance due on account overdrafts, Samuel J. Savage | $18,083.69 |
| May 2. | Cash advanced to Frances A. Savage for account of Estate of Samuel J. Savage | 300.00 |
| May 2. | Amount due on note of Joseph V. McDonald.. | 205.00 |
| May 2. | Amount due on revaluation of securities held as firm | 4,926.33 |
| | Total | $23,515.02 |
| By account of decedent's profits in partnership agreement | | 11,394.95 |
| | Balance | $12,120.07 |
| Interest from May 1, 1931, to November 23, 1932 | | 1,090.80 |
| | Total | $13,210.87 |

"The complainant excepts, contending that the charges for overdrafts ($18,083.69) and on the re-valuation of securities

($4,926.33) are unjustified, and that the profits ($11,394.95) were in excess of that sum.

"Goodwin was the surviving member of the firm of Hall & Henshaw, New York insurance brokers, and succeeded to the assets. August 23d, 1923, he left Savage and Dowrie into the firm as equal partners, each agreeing to pay him $12,500 for his interest in the firm. The partnership agreement, *inter alia,* provides that the partnership books 'shall be written up and balanced and the results of the business ascertained at least once every month during the continuance of the partnership and the distributable earnings shall be allocated to the partners according to their respective interests.' The allocated profits were subject to withdrawal, but overdrawals were to be only by consent of the other partners. The agreement also provided that 'upon a partner withdrawing from the firm, his account shall be brought up to the date of his retirement and he shall have his share of the profits, but forfeit to the other partners all right, title and interest in the business and assets of the firm and in and to all right and interest in the good will or the firm name of the partnership.' Upon the death of a partner the rights of his legal representatives were to be determined as in case of a withdrawing partner except 'that the surviving partners shall pay to the * * * legal representatives of the deceased partner * * * an amount equal to the share of the profits of the * * * deceased partner during the year preceding his * * * death.' An *addendum,* November 23d, 1928, provided that in the event of the withdrawal, death or retirement of a partner 'the securities, if any, carried in the investment account on the books of the firm at their cost price shall be revalued and taken into the assets of the firm at their market value (meaning thereby the average between the bid and asked prices) on the day of such withdrawal, death or retirement.' May 3d,. 1930, the term of the partnership was extended from April 30th, 1931, to April 30th, 1951, and later in the same year in an *addendum* of September 17th, it was stipulated 'that in the event of the death or disability of any of the partners during the year ending August 31st, 1931, the net amount.

($13,540.60) carried into the books in the month of August, 1930, as profit on the sale of the lease (being the amount realized on the sale of the lease and amount allowed by owners of building, less moving expenses and expenditures for new furniture and fittings) is not to be taken into consideration in the calculation of any equity due such disabled partner or the estate of a deceased partner.'

"When Savage died, May 1st, 1931, his account was overdrawn, as the master found, $18,093.69, and that for that he was responsible to the firm. The contention against this is that, inasmuch as Goodwin's account was also overdrawn $31,420.27, and Dowrie's $17,376.19, in order to bring Savage's account up to the date of his death as required by the co-partnership agreement, the total overdrafts, $66,880.15, should be credited to profits of the firm and divided among the partners, which would lead to this result:

| | |
|---|---|
| Warren F. Goodwin | $31,420.27 |
| Alfred D. Dowrie | 17,376.19 |
| Samuel J. Savage | 18,083.69 |
| Total | $66,880.15 |

Alfred D. Dowrie
$22,293.38—17,376.20=4917.18
— Credit
Samuel J. Savage
$22,293.38—18,083.69=4209.69
— Credit   $9126.87
Warren F. Goodwin
$31,420.27 — 22,293.38 = 9126.87
Debit $9126.87

"The inherent weakness in the argument is that the overdrafts were not out of profits. The profits of the business were allocated monthly to each partner's account. The co-partnership was free of debt when Savage died and overdrawals were consequently not out of borrowed money. The only other possible source was capital in the Hall & Henshaw firm when Dowrie and Savage were taken in as partners by Goodwin, for the interest in which they each paid him $12,500. Counsel at the hearing before the master failed to develop, as they

should have done, the source of supply for the overdrafts, and we reach the conclusion that it was capital by process of elimination. Under the terms of the partnership agreement, upon the death of a partner, the capital assets are the property of the surviving partners and Dowrie having outlived both Goodwin and Savage, the Savage estate is accountable to him for Savage's withdrawals in excess of his monthly share of the profits. The exception is overruled.

"The co-partners purchased securities at a cost of $20,434.50. They were paid for out of profits of the business which otherwise would have been reflected in the monthly accounts of allocated profits. The securities were carried on the books as an investment account, an investment of their joint profits. They were not an asset of the firm and were not so regarded by the partners for which we find the evidence in the *addendum* of November 23d, 1928, above recited. Upon the death of Savage, the securities were revalued at $5,655.50, a depreciation of $14,799, and the master, misconceiving the meaning of the *addendum,* charged the Savage estate with $4,926.33, as its proportionate share of the loss. The true interpretation of that writing is that upon the death of a partner, the securities, the common property of the individuals of the partnership, were to be 'taken into the assets of the firm' and paid for by the firm as then constituted at their then market value, each partner to be allocated his share. Instead of charging the Savage estate with a share of the loss, the master should have allowed a credit of $1,885.17, one-third of the value of the securities in which it had a third interest. If the securities were an asset of the firm, why, upon the death of a partner, should they be taken into the assets of the firm and why at a revaluation? The interpretation for which the defendant contends would lead to this inadmissible result: that Savage lost his earnings of $6,811.50 invested in the securities, and in addition, his estate is liable for a third of the depreciated value, $4,926.33; total of $11,737.83. The exception is sustained. The account will be restated accordingly.

"Savage's profits were \$15,894.95 for the twelve months preceding his death. This included \$4,500, his share of the profits on the lease referred to in the *addendum* of September 17th, 1930, above recited. His share fell in because he died before August 31st, 1931; it was agreed that it should and the amount by which the twelve months' profits were increased by \$4,500 was deducted. The exceptant contends that the proceeds of the sale of the lease were \$22,500 and that the disbursements were but \$2,396.03 and that the net profits were \$20,103.97 and Savage's share \$5,663.37. It is established that the disbursements were the difference between the sale price and \$13,540.60. But if the profits were as the exceptant contends, \$5,663.37 instead of \$4,500, there is no change in result. The profits, whatever the sum, were lost to Savage by his death before August 31st, 1931. Exception overruled.

"Interest should be allowed from the date of the death of Savage. *Buckingham* v. *Ludlum, 29 N. J. Eq. 345.*"

*Mr. Lionel P. Kristeller,* for the appellant.

*Messrs. Wolber, Gilhooley & Yauch,* for the respondent.

PER CURIAM.

The decree under review will be affirmed, for the reasons expressed in the opinion of Vice-Chancellor Backes.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 14.

*For reversal*—None.